Good morning, your honors. May it please the court, I am Bruce Jones, representing Appellant Guadalupe Gonzalez. I acknowledge right up front that the Supreme Court and this court have set a very high threshold for recognizing Bivens' actions in new contexts. But while the Supreme Court in the Abbasi case and this court in the Farrer case have confirmed that new Bivens' actions are, the word is used, is disfavored, no court has held or even hinted that they are prohibited entirely. On the contrary, the fact that there is a standard for evaluating them suggests that there can be new Bivens' cases in appropriate circumstances. We submit that this case is just such a circumstance. This case presents a very narrow question. Contrary to the government's suggestion, this case does not require the court to broadly recognize a Bivens' action in the First Amendment context or to open the floodgates of First Amendment cases. This case simply requires recognition that in the unusual situation where a prisoner has been denied access to the very administrative grievance process that Congress provided, a Bivens' action for damages is the only effectible and available means of vindicating the rights that the Constitution and Congress have conferred. The standard, as you know, for evaluating such a new Bivens' action is whether there are, quote, special factors counseling hesitation in recognizing the action. The only factor cited by the district court as justifying rejection of the Bivens' action here was the time, cost, and energy associated with defending the action. But I struggle with how he was precluded under PLRA and other applicable remedial provisions from overcoming whatever obstacle was placed in his appellate path. Well, he was denied the forms that were required to... Well, OK, so you go complain about that. And if the prison officials say, well, to heck with that, we don't, you know, we aren't going to give you the forms because we really don't think you should have a write-up appeal, then you come to our court. You probably don't need to get as far as our court to get that slap down. The problem there is that if you go to that level, you're talking about prison policy and the very kind of things that other cases have held are not appropriate for Bivens' actions are special. But PLRA mandates exhaustion. And it seems to me what we're doing, what you're urging here creatively, is a path around exhaustion. The point here is that exhaustion was prevented by... No, I'm saying it wasn't. Or at least we don't have any kind of a record establishing that. Well, the record, the assumption that the district court relied on and the assumptions that the government has conceded for the purpose of this appeal, which, of course, they may contest later, is that what was done to Mr. Gonzalez was in fact a violation of the First Amendment. Who assumed that? The government? The premise. And that's the premise of the lawsuit. The premise. That's the premise of the lawsuit. The premise of the lawsuit. I understand that. And what I'm saying is that that premise of the lawsuit was not challenged below and was not relied on by the district court to dismiss the lawsuit. The focus was on whether or not a Bivens' action in this... If that consideration provides a power, it seems to me that can provide a powerful if not overwhelming reason not to get into the extension of Bivens. Because we have a regime, including state and federal prison systems and the PLRA and so forth, that get at the exhaustion problems. And putting a First Amendment label on them, I don't understand why that's even necessary. They're supposed to do that. They're supposed to provide an avenue. The point here is that they did not. And Mr. Gonzalez's testimony... You're talking Gomez due process. No, if you take a look at the Davis... It's not constitutional at all. It's really statutory and administrative. If you take a look at the Davis v. Brown case from this court, 38 F. 3rd 379, that's a case... It's a 1983 case, but it involves the constitutional right under the First Amendment and it involved retaliation against a prisoner in state custody for the use of the grievance system. That's the analogous First Amendment claim that we are making here. And it's not, as I said, this is not the subject of the district court's decision. It was assumed by the district court that Mr. Gonzalez's allegations would constitute a violation of the First Amendment. But he didn't have to go there because he concluded that... Or the judge concluded, excuse me, she concluded that this was not recognized as a bivence action. And that's what we're in front of you. It may be that when we go back down and the record becomes more complete, it turns out that there was no exhaustion of remedies. That's possible. But the factual record, as you pointed out, is simply not there right now. Well, counsel, the Supreme Court says, as I understand it, that one of the things we're really supposed to look at as a factor is whether there's any alternative existing process. So I think that is contrary to what you just said because at this stage of the game, when we're even deciding if there's a cause of action, we decide if there's any existing alternative process. And Judge Loken gave you three or four. But the problem is that those have been thwarted. And this court said in the Townsend versus Murphy case two years ago, and I'm quoting, the availability of a remedy, according to the Supreme Court, is about more than just whether an administrative procedure is on the books. Then there's citing to Ross versus Blake. Continuing, an administrative remedy is not capable of use and therefore unavailable, for example, when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. And that's the factual predicate. Is that a PLRA case you're referring to? That is, I don't remember, Your Honor, to tell you the truth. Because the PLRA exhaustion requirement has been very, very stringently applied. And just because the inmates said, well, it was hard or they took it away from me and so forth, has been held not to trump the exhaustion requirement. I submit here that it's more than just claiming that. That is the assumption, the factual assumption that this dismissal was based on. What effect, is Mr. Gonzalez now, is he any longer in custody? He is not. So how does that affect this decision-making process here under your claim? The decision. I mean, if he's no longer, so we're talking about administrative remedies that are otherwise available, those are not, correct? Those are not correct. At present, they were at the time of the original events. Or they would have been, had he not been prevented from pursuing them. So does that impact how we look at this case? I don't think that it does. I think that it should be, it needs to be evaluated as of the time that the events occurred and at the latest at the time the officer was commenced, which was while he was still in custody. So I haven't thought, I'm kind of going off the top of my head here, but I can't think of a way off the top of my head in which that custodial and non-custodial aspect factors into this. At the time of summary judgment, was he still in? No. At the time of summary judgment, he had been released. But he was at the time he filed, and of course, at the time they denied him the forms, he was there. Yes. But at the time he filed, he was still in prison, right? That's, yes. Tracking the dates, I confirm that. Thanks for the timeline. Your Honor, it is, let me emphasize again that this does not require a broad Bivens action. The Supreme Court in Agassi made clear, in Abassi, excuse me, made clear that the determination of whether or not a Bivens action is a new Bivens action and therefore requires a separate consideration of whether there are special factors, counseling, hesitation, that is very, very incremental. It doesn't take much to create a new Bivens action under Abassi that requires a new evaluation. So even if the court were to recognize the Bivens action here based on the prevention of access to the administrative remedy process, it would not be opening the door to general allegations. How could we, how would we write that? So how can we write, how could we write an opinion reversing without saying this is a claim for First Amendment retaliation and we agreed with the appellant that a Bivens action should lie? You would say that, but when the, but? And the next 500 inmates would have their own little extension of it. No, the, every new case that would come up would, I mean, unless, this case, while not unique, is certainly rare that an inmate would be prevented from using the very grievance system that was intended to accommodate this. You haven't seen the 30 years of these claims that I have. I'm sorry, but it's not that rare. That's true, Your Honor. Creativity is endless. But it's that creativity that creates the new need for a new inquiry under Bivens. That's why 500 cases would follow. Any way we could say this unless we didn't use the words First Amendment retaliation in a grievance process or any other aspect of prison life. And you would need to use the word First Amendment to get the constitutional element in here. I agree. And is there a? They put me in egg sack because I asked for a TV set in my cell. That's a violation of my First Amendment rights. But it does not address the grievance process. And that's my point. If you just are focusing on the aspect of the conduct that prevents the inmate from using the grievance process that would otherwise be a special factor, counseling hesitation, that's the narrowness of the issue you're presenting here. You're presented with here. Your Honor, I've got about three minutes left. I'd like to reserve the remainder of that for rebuttal if I may. Very good. Thank you, Your Honor. Ramsdell? Good morning, Your Honors, Counsel, and may it please the court. My name is Allison Ramsdell. And I'm here on behalf of the government to ask the court to affirm the district court's grant of summary judgment. This case began at the federal prison camp in Yankton, South Dakota, where Mr. Gonzalez filed 21 grievances and is three years of incarceration. In two of those instances, Mr. Gonzalez alleges that Mr. Bent, in retaliation, denied him a BP-11, which is the fourth and final form in the grievance process. Despite Mr. Bent's actions, Mr. Gonzalez proceeded to district court, where these two claims survived the dispositive motion, proceeded through a full phase of discovery, and were eventually decided in the government's favor. Did the government concede in the district court that this is a valid First Amendment claim, if not in the Bivens context? For the sake of this argument related to Bivens, we conceded that if Mr. Bent did deny the form, it could amount to retaliation. But for the qualification. That's not. Retaliation isn't my question. It's is this protected First Amendment activity to be run around in a prison grievance process? So this court. Did the government concede that? No. And this court has held that, in a 1983 scenario, that being denied access to an administrative grievance process doesn't rise the level of a constitutional violation. Do you want to address Davis versus Brown? Your opponent, your. Oh, I'm sorry. You have a case for that last point. Buckley v. Barlow. OK, thank you. Sure. The other side mentioned Davis versus Brown. It's in their brief. I don't think you replied to it. You want to reply to it now? I'm not prepared to reply to it right now. Great. And you can do a 28-J letter if you wish to. Thank you. So now we're before this court arguing about whether Mr. Gonzalez is entitled to money damages or $25 million for being denied access to a process for the denial of a form. As the law stands, Mr. Gonzalez is not entitled to that remedy, and the government urges this court to not extend one today. Generally speaking, as Mr. Gonzalez has acknowledged, Bivens remedies are disfavored. And this court long before Abbasi acknowledged the presumption against judicial recognition of direct actions for constitutional violations by federal officials. Even more compelling, the Supreme Court has never recognized a First Amendment retaliation claim as grounds for a Bivens remedy. And every federal court sends Abbasi to consider that issue in the prison context has declined to extend a remedy. This court should similarly decline to extend that remedy, because there are various special factors counseling hesitation. The special factors inquiry must concentrate on whether the judiciary is well-suited, absent congressional action, to weigh the costs and benefits of allowing a Bivens remedy. The only relevant threshold is remarkably low. Hesitation is counseled whenever thoughtful discretion would pause to even consider. And this court has acknowledged that it does not take much to make the court pause, because in most instances, Congress is in the better position to consider if the public interest would be served by imposing a new remedy. If there are sound reasons to think Congress might doubt the efficacy of a new remedy, this court should refrain. And this case implicates numerous special factors that taken together dictate that it would be inappropriate to imply the Bivens remedy that Mr. Gonzalez now requests. The first special factor are existing alternative processes. Mr. Gonzalez urges that there is an alternative process. That's the heart of this case. But the Supreme Court has acknowledged that if there is an alternative remedial structure, that alone may counsel hesitation. Is that structure still available to him now? Since he's no longer under the custody of the BOP, it's not. Does that affect at least how we look at this particular case on that prong? I don't think it does. His complaint related to his time in incarceration. He filed those complaints while he was in incarceration, and it came before the district court while he was incarcerated. So at the time, the issue that he was grieving was relevant. He was in custody and had access to the administrative remedy. Well, that's the point, though. Here, in this unusual circumstances, he didn't. His allegation is, I was not given access to the administrative remedy process. That's a fair assessment, right, of his claim? He was denied the forms to actually complete that administrative process? Right, and the remedy for that isn't a retaliation claim. It's to then go to district court. An alternative process doesn't have to give any remedies, doesn't have to give money. It just needs to be a form. The remedies, administrative and judicial, were available while he was still in custody. That's correct. Indeed, I suspect, by not challenging him promptly, he waived them, and his non-exhaustion was fatal. Right? I assume there are time. Sure, the VOP has time limits on every step of these 11 steps of the appeal process. And then you go to court, and he just bailed out. I don't have the forms. I'm going to sue for $25 million. Right, I think that's an interesting point. He never actually grieved the denial of the BP-11. Right, that's what you do. Right, and he, you know. You go on to step eight, and they won't, and a jerk won't give you the forms to go to step nine, 10, and 11. That's either the next grievance, or you put that on a letter to the step nine official. Mr. Gonzalez's case demonstrates that that process works. One of these two claims, he was grieving the denial of a BP-8, the first form. And as soon as the warden caught wind of that, he directed his officer to give the BP-8. And that was resolved. But you can't get damages under the PLRA. That's correct. So the adequacy of this alternative process is just that he was given a form to be heard, which, of course, he was given through the district court. The problem is, when he got there, he asked for money damages, which he is not entitled to. In his case, it's not like Bivens or Carlson, where it's damages or nothing. In Mr. Gonzalez's case, equitable relief would have been a remedy to which he was entitled. The second special factor of counseling hesitation is Congress's frequent action in this field, together with its repeated failure to extend a remedy. Mr. Gonzalez urges that silence is not relevant. But the Supreme Court has stated that in any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant. And so the fact that at virtually every term, Congress has declined to create the remedy that Mr. Gonzalez requests should counsel hesitation in extending that remedy. Congress had an opportunity to consider extending this remedy in 1980 with CRIPA, in 1995 with the PRLA, in 2003 with the Prison Rape Elimination Act, and in 2007 and 2009, when faced with the Prison Abuse Remedies Act, which would have made it easier for prisoners to file claims, they chose not to pass that legislation. Most relevant here, of course, is the Prison Litigation Reform Act, which was created to limit prisoner litigation and to remove federal courts from supervising day-to-day operations. More significant than that is the context in which the PLRA was passed, the legislative history, and the substance of the act itself. With regard to context, the PLRA was passed over 100 years after 1983 was on the books, yet Congress refrained from creating a federal counterpart. But Bivens was already decided by the time of the PLRA, right? That's right. And so was Carlson, which I think also could be interpreted to imply that Congress chose not to extend remedies in a meaningful way. So Carlson was the Supreme Court's first and only case where they extended money damages to the prison context for an Eighth Amendment deliberate indifference claim, deliberate indifference to a serious medical need resulting in death. And with that on the books for 15 years, Congress chose not to extend other types of prisoner mistreatment. Isn't it more than just not extending? The remedy sought here was rejected. That's right. What do we have in this array of please extend Bivens cases that discusses that? That not only is there an alternative, but the alternative precludes the remedy that the predominant Bivens remedy of damage. Right. There's a limitation on damage. Are there cases that have talked about that? That it's not just failure to extend. It's that the alternative statutory remedy is inconsistent with Bivens remedy. So Bivens, to take a word out of context, is preempted. I'm not familiar with an Eighth Circuit case that discusses that in the Bivens context. I know in Royal versus Kautsky, the Eighth Circuit discussed the physical injury limitation in the PRLA. We've dealt more than once with the remedial limitations. And that's what you're asking about? Well, I'm asking if any of the cases that have been considered the special factors for it's kind of kicked around a generality, that not only that there's an alternative remedy available, but that the Bivens remedy sought has been denied by Congress in a statutory regime. I'm not aware of any case that is that explicit, but I think there are a number of cases that reference congressional action in the area. It's a bit like Social Security, where people want to use the Constitution or some other basis of claim to get around the remedial limitations in the Social Security Act. I think the Supreme Court's been very negative on that. That's right. And so here, I think, if you just look at the physical injury requirement in the PRLA, the fact that Congress expressly provided a damages remedy for some victims, those who can show physical injury, and didn't provide that remedy for those who are putting forth mental or emotional injury, like Mr. Gonzalez has, that shows that Congress considered the issue and made a deliberate choice to not extend the remedy that Mr. Gonzalez is asking this court to extend. And that's certainly a special factor counseling hesitation. The third special factor, as the district court found, was the cost, time, and associated, not just with defending any Bivens action. And that's really the only one of the special factors that the district court addressed, right? According to Mr. Gonzalez, in the way you read the opinion, it could be a special factor. I would submit that that's not significant. There's no precedent establishing how many special factors. You're urged to consider them in the aggregate and decide if, in the aggregate, it gives you reason to pause. The Supreme Court does use the plural term, special factors. That's true. Yeah, proceed. So Mr. Gonzalez also points out that the cost, time, and energy consideration would be present in any case. But the government submits that it's in a context where a prisoner, first, is allowed to grieve any issue through the administrative remedy program. There's 175,000 federal prisoners currently. And if we are to extend money damages for a retaliation claim, you can imagine what comes next. Any time a prisoner is unhappy with the results of their grievance process, it could become a retaliation claim. And those claims are difficult to create a workable action for. Retaliation claims are subjective in nature and so easy to allege, hard to defend. And you'd have more non-meritorious claims proceeding beyond the dispositive motion phase into discovery, potentially trial, and back here at the Eighth Circuit. The final special factor for consideration is the separation of powers. The separation of powers principle should be central to your analysis. When an issue involves a host of considerations like this one that must be weighed and appraised, the Supreme Court has acknowledged that it should be committed to those who write the laws, rather than those who interpret them. Or as Justice Alito said, deciding that a person like Mr. Bent, who committed certain conduct, should be liable to people like Mr. Gonzales, is in every meaningful sense like enacting a law. And in our constitutional order, the job of writing laws belongs to Congress. So the separation of powers, along with alternative processes, congressional action in the area, and the cost, time, and energy of defending this type of Bivens action, all counsel hesitation in extending a Bivens remedy. And the government would ask that the court affirm the district court. And may I ask you one more question? Yes. When you filed your brief in August, you cited the Third Circuit and the Ninth Circuits as having cases that are pretty close and rejecting a Bivens action. Are there other circuits? Have you checked since August? Those still remain the two circuits on the books with decisions against extending Bivens. There have been more district court decisions in the government's favor, but no more circuit. Thank you. Thank you. Jones for rebuttal. Thank you, Your Honors. At the beginning, if I may, before I forget, request the courts leave to submit a Rule 28J letter on the issue that Judge Kelly raised concerning the effect of the post-release factor here. Addressing several of the government's points in the order in which they were raised, the government is correct that there have been a number of cases that have rejected Bivens actions in the First Amendment context. And they're listed on pages three and four of the government's brief. I would note, however, that virtually all of those cases have, in the parenthetical that the government itself provided, the availability of an adequate alternative remedy as one of the factors. And that is the whole point here, because that's what's missing. Do you count the circuits the same as she does? I'm sorry? Yes. Do you count the circuits third and ninth? I do. I haven't seen any new decisions since last August on this issue from a circuit court. So this would just be what you're arguing for is just sort of a subcategory of a retaliation claim? Yes, that's right. So it's almost an as-applied? Is that sort of the concept that you're going for? I'm saying that you have a narrow set of facts here that are unique and compelling, because they, by their nature, foreclose the existence of one of the alternative remedy, which is one of the factors, counseling hesitation. The congressional inaction in the field, I submit, and the Supreme Court has recognized in Bivens cases that, yes, you may have no evidence that Congress granted a particular remedy, but there's also no evidence that it prohibited a particular remedy. If I quote from the Bush case, which is the Supreme Court case in 1983 that rejected a Bivens case in a First Amendment context there, it says, we noted the absence of any explicit congressional declaration that persons in petitioner's position may not recover damages from those responsible to their injury. So it can be read either way. I would submit that the availability of other remedies and the requirement to be exhausted is not, in fact, inconsistent with the availability of damages. With respect to costs, government says that costs of administration is a special factor. I submit that while it may be a factor, it is not a special factor because it exists in every Bivens case, including the ones that have already been recognized. And then finally, with respect to separation of powers, there is nothing here that interferes with sensitive functions of the executive branch. No discouragement of high-ranking officials from taking urgent action. The issue here is compliance with standard prison procedures and rights, not unique national concerns as in Abassi or as in FARA. Finally, I would suggest that if there is ever a case that, after Abassi, in which a new Bivens action should be recognized, and Abassi itself recognizes that such cases may exist, the circumstances here justify recognizing such an action. Thank you, Your Honors. Thank you, Counsel. Case is done and done.